## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:22-cv-21544-JAL

DAVID WALTON, individually and
on behalf of all others similarly situated,

    **CLASS ACTION**

   Plaintiff,

    **JURY TRIAL DEMANDED**

v.

CEREBRAL, INC.,

   Defendant.

_____/

### <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>[1]

   Plaintiff David Walton brings this class action against Defendant Cerebral, Inc., and alleges as

follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

---

[1] Plaintiff hereby amends his Complaint as a matter of course, thereby mooting Defendant's Motion to Compel Arbitration and Motion to Dismiss, [DE 23]. *See Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (concluding that "[m]otions to compel arbitration . . . are brought properly under Federal Rule of Civil Procedure 12(b)(3)"); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009); *Cancer Ctr. Assocs. for Research and Excellence, Inc. v. Phila. Ins. Cos.*, No. 1:15-CV-00084 LJO MJS, 2015 U.S. Dist. LEXIS 51091, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) ("[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'"); *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 938 (D. Ariz. 2011) (motion to compel arbitration may be properly brought pursuant to Rule 12(b)(1) or 12(b)(6)); *Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*, No. CV 09-3627, 2010 U.S. Dist. LEXIS 139848, 2010 WL 5572079, at *2 (C.D. Cal. Mar. 19, 2010) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.4 (9th Cir. 1988)) (treating a motion to compel arbitration as a Rule 12(b)(3) motion); *Lemberg v. Lularoe*, No. ED CV 17-02102-AB (SHKx), 2018 U.S. Dist. LEXIS 239291 (C.D. Cal. Mar. 1, 2018) ("Because LLR's Motion to Compel Arbitration is targeted at a previous iteration of the Complaint in this action, LLR's Motion to Compel is denied as moot. Plaintiffs' FAC adds new Plaintiffs and causes of action, and thus if Defendants seek to compel arbitration, Defendants should file a Motion to Compel Arbitration based upon Plaintiffs' FAC.") (*citing Armendariz v. Ace Cash Express*, No. 3:13-CV-00590-BR, 2013 U.S. Dist. LEXIS 101078, 2013 WL 3791438, at *1 (D. Or. July 19, 2013) (finding that a motion to compel arbitration "suffices as a 'responsive pleading' to Plaintiff's Complaint or as an unenumerated motion under Rule 12(b), and, therefore, Plaintiff was permitted to file a First Amended Complaint pursuant to Rule 15(a)(1)(B) without first obtaining leave of Court or consent of Defendant.").

## NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.      Defendant engages in telephonic sales calls to consumers without having secured prior express written consent as required by the FTSA, and without providing the required seller identification information as required under the TCPA and FTSA.

3.      Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

4.      Through this action, Plaintiff seeks an injunction and statutory damages on behalf of himself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Miami-Dade County, Florida.

6.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

7.      Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## JURISDICTION AND VENUE

8.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA")

9.    This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

10.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Florida, and Defendant is a citizen of California, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiff seeks $500.00 in damages for each violation, which, when aggregated among a proposed class of over 100,000, exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). *See also* Notice of Removal, [DE 1], at 6

11.    Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state.   Defendant initiated and directed telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's cellular telephone number to sell goods, services or products in Florida.   Plaintiff's telephone numbers have area codes that specifically coincide with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

12.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction,

and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS**

**Defendant's Website**

13.     Defendant owns and operates a website located at www.cerebral.com. Defendant has complete control over the design and content of the website.

14.     Defendant utilizes the website in part to harvest consumer telephone numbers which it then utilizes for robotext marketing campaigns.

15.     On its website, Defendant uses the following form which, in violation of the TCPA and FTSA, requires consumers to consent to Defendant's text messages to receive the services offered on the website:

**This is the first step to feeling well.
Start your free emotional assessment.**

We're going to ask you a series of clinically tested questions to help us understand your needs and emotional state.

Email

US +1 | Mobile Phone Number

Create Password

..............

You must opt into text messaging to create an account.

☐ I agree to receive transactional calls/texts about my treatment plan and marketing texts at my phone number from Cerebral, including by autodialer. Consent not required. Message frequency varies. Message & data rates may apply. Reply HELP for help; STOP to opt out.

**Get started**

**I already have an account**

By clicking "Get started", you agree to Cerebral's Terms & Conditions, including the mandatory arbitration provision, Privacy Policy and Telehealth Consent.

4

16.     This alone is a violation of the TCPA and FTSA, both of which require consumer consent to be voluntary, not coerced. *See* 47 C.F.R. § 64.1200 (f)(9)(i)(B) (consumers are "not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."); Fla. Stat. § 501.059 (consumer "not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.").

17.     As depicted above, Defendant's website also contains hyperlinks to lengthy legal terms, including an arbitration provision buried in Defendant's Terms & Conditions.

18.     As depicted above, the language that is supposed to alert consumers to Defendant's lengthy legal provisions is printed in tiny light font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye.

19.     Moreover, the comparatively larger font used in all of the surrounding text naturally directs a visitor's attention everywhere else, including towards the large "Get started" button shown above.

20.     Further, the text of the "Get started" button provides no indication that it would bind a visitor clicking on the button to a set of terms and conditions.

21.     And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. For example, the large header at the top of the page:

22.     The design and content of Defendant's webpage draw a visitor's attention away from the most important part of the page: an approximately twenty-page document that contains numerous significant legal provisions.

23.     In sum, the design and content of Defendant's website does not adequately call attention either the existence of the Terms & Conditions or the fact that, by clicking the "Get started" button, visitors were agreeing to be bound by those terms, including an arbitration provision.

### Defendant's Robocalls to Plaintiff

24.     After acquiring Plaintiff's telephone number through its website, Defendant bombarded Plaintiff with robocalls.

25.     Specifically, on or about March 2022, Plaintiff received the following text solicitations from Defendant:



26.     The purpose of Defendant's telephonic sales calls was to solicit the sale of Defendant's goods and/or services.

27.     As demonstrated by the above screenshots, when it sent its text message solicitations to Plaintiff, Defendant failed to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted.

28.     As demonstrated by the above screenshots, when it sent its text message solicitations to Plaintiff, Defendant's employee that sent the messages failed identify himself or herself by his or her true first and last names

29.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

30.     Plaintiff utilizes his cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

31.     To transmit the above telephonic sales text message calls Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

32.     To send the text message, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit thousands of text messages automatically and without any human involvement, utilizing a "short code" (27191) – a shortened telephone number that can only be used in conjunction with computer equipment (not an ordinary cellphone) to transmit the message.

33.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

34.     The Platform has the capacity to select and dial numbers automatically from a list of numbers.

35.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

36.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

37.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

38.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

39.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

40.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

41.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

42.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

43.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

44.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

45.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

46.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

47.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

48.     More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

49.     Defendant's failure to (1) identify the individual caller, (2) identify the legal name of the entity calling, and (3) identify a telephone number or address at which the caller may be contacted, caused Plaintiff and the Class members harm because they were not informed as to who was sending them unsolicited calls.

50.     Defendant's unsolicited text messages caused Plaintiff harm, including aggravation and annoyance. Additionally, Defendant's unsolicited messages violated Plaintiff's substantive rights under the FTSA and TCPA from be free from harassing calls like Defendant's.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

51.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and

on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil

Procedure 23. The Classes that Plaintiff seeks to represent are defined as:

> **FTSA Class**: **All persons in Florida who, (1) received more than one telephonic sales call regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

> **Seller Identification Class: All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number, (4) that did not disclose the name of the individual caller, the name of the person or entity on whose behalf the call is being made, or a telephone number or address at which the person or entity may be contacted.**

52.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

53.     Since January 2020, Defendant "sent text messages to at least 100,000 customers

located in Florida, with the number of customers in the United States that received text messages

from Defendant far exceeding that amount." Notice of Removal, [DE 1], at 6. Accordingly, the

members of the Classes are so numerous that joinder of all members is impracticable.

54.     Identification of the Class members is a matter capable of ministerial determination

from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

55.     There are numerous questions of law and fact common to the Class which

predominate over any questions affecting only individual members of the Class. Among the

questions of law and fact common to the Class are: [1] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members; [2] Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls; [3] Whether Defendant is liable for damages, and the amount of such damages; and [4] Whether Defendant properly identified itself in its solicitations as required under the TCPA.

56.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

57.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

58.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate

claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

60.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the Class)**

61.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

62.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

63.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(i).

64.     "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver

12

or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

65.     Defendant failed to secure prior express written consent from Plaintiff and the Class members.

66.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's the Class members' prior express written consent.

67.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

68.     Additionally, in violation of section 501.059(2), Defendant sent telephonic sales calls that did not identify the first and last name of Defendant's employee that sent the solicitations.

69.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in

13

damages for each violation.  Plaintiff and the Class members are also entitled to an injunction

against future calls. *Id*.

## COUNT II
### Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
#### (On Behalf of Plaintiff and the Seller Identification Class)

70.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through

60 as if fully set forth herein.

71.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> **(4)** *Identification of sellers and telemarketers.* A person or entity
> making a call for telemarketing purposes must provide the called party
> with the name of the individual caller, the name of the person or entity
> on whose behalf the call is being made, and a telephone number or
> address at which the person or entity may be contacted. The telephone
> number provided may not be a 900 number or any other number for
> which charges exceed local or long distance transmission charges.

72.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are

applicable to any person or entity making telephone solicitations or telemarketing calls to wireless

telephone numbers.

73.     Defendant violated the requirements of section 64.1200(d)(4) by failing to identify

(1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was

being made; and (3) a telephone number or address at which Defendant may be contacted.

74.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members

are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant.

To the extent Defendant's misconduct is determined to be willful and knowing, the Court should,

pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the

members of the IDNC Class.

75.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**Injunctive Relief Pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Seller Identification Class)**

76.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

77.     Pursuant to section 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the Seller Identification Class members from Defendant's unsolicited calls and practices.

78.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the Seller Identification Class members.

79.     Plaintiff and the Seller Identification Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating 47 C.F.R. § 64.1200(d).

80.     The injuries that the Plaintiff and the Seller Identification Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

81.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

82.     Accordingly, Plaintiff and the Seller Identification Class members seek an injunction requiring Defendant to identify (1) the individual caller; (2) the legal name of the entity calling, and (7) a telephone number or address at which the caller may be contacted, whenever engaging in telephonic sales calls like the ones it sent  to Plaintiff and the Seller Identification Class members.

83.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)**
**(On Behalf of Plaintiff and the FTSA Class)**

84.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

85.     Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

86.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

87.     Plaintiff and the FTSA Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

88.     The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

89.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

90.     Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

91.     Plaintiff and the FTSA Class members also seek an injunction requiring Defendant's employees to identify their first and last name when engaging in telephonic sales calls.

92.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages for Plaintiff and each member of the Class as permitted under the TCPA and FTSA;

c)  An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d)  Injunctive relief under the FTSA and TCPA as outlined above;

e)  Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: July 5, 2022

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713